CITY BANK OF BOONE, Appellant, v. J. D. BENNETT, Appellee.

1. **Contracts:** EVIDENCE. Application having been made to the plaintiff by one F. to discount certain notes expected to be received at a future sale of a herd of cattle, its cashier stated that he did not know much about short-horn cattle, but he presumed it would be all right, and that he would attend the sale, and learn more about them. In the course of the negotiations the cashier was informed of the liens upon the herd, by whom they were held, and of the amount necessary to clear the herd and meet the needs of F. The cashier attended the sale as agreed, and, as he was about leaving, said to F: "You have had a good sale; it is all right. When will you be up?" To which F. replied: "As soon as the notes are all in." *Held*, that the evidence was insufficient to show an agreement on the part of the plaintiff to discount the notes, and to pay the liens upon the cattle out of the proceeds.

2. ———: ———: INSTRUCTIONS TO JURY. Where the evidence of an agreement, set up as a defense to an action, was such that the court should have instructed the jury that the fact of such agreement was not established, *held*, that an instruction which left such question to the determination of the jury was erroneous,

*Appeal from Boone District Court.*—HON. S. M. WEAVER, Judge.

TUESDAY, FEBRUARY 2, 1892.

ACTION to recover an amount alleged to be due on a promissory note. There was a trial by jury and a verdict and judgment in favor of the defendant. The plaintiff appeals.—*Reversed.*

*E. L. Green*, for appellant.

*R. F. Jordan*, for appellee.

Robinson, C. J.—In June, 1887, L. W. Fisk and C. L. Fisk were engaged in the business of farming, stock-raising and dealing in stock in Boone county, under the firm name of L. W. Fisk & Son. They had a herd of cattle which they sold at auction on the twenty-third day of the month named. The defendant purchased two of the cattle thus sold, for which he gave the note in suit. At the time of the sale several mortgages on the cattle given by L. W. Fisk & Son were outstanding and unpaid. One of these mortgages was held by a man named McFarland, and covered the cattle purchased by the defendant. A few weeks after the sale McFarland took the cattle so purchased and sold them under his mortgage. The note given by the defendant was transferred to the plaintiff before it was due. The defendant claims that before the auction sale was made the plaintiff had agreed with L. W. Fisk & Son to advance money on the notes which they should receive at the sale sufficient in amount to satisfy the McFarland mortgage, and release the property in controversy; that soon after the sale L. W. Fisk & Son delivered to the plaintiff notes, including that in suit, pursuant to said agreement; but that after receiving them the plaintiff refused to carry out the agreement. The plaintiff is a partnership, and the defendant, as a further defense, avers that one Erickson, a member of the firm and its cashier, attended the auction sale, and knew at the time that the property for which the note in suit was given was purchased at the sale by the defendant; that it was included in the McFarland mortgage, and that L. W. Fisk & Son had no right to sell it; that the defendant acquired no title by the purchase; that there was no consideration for the note, and that it was received by the plaintiff with notice of

all these facts. The plaintiff denies the alleged agreement, and claims that it purchased the note in good faith, without notice of the alleged defenses, and for value.

I. The appellant contends that the verdict is not sustained by the evidence. The notes taken on account

1. CONTRACTS: of the sale amounted to about three thousevidence. and dollars. Of these, notes amounting to about one thousand dollars were transferred to the plaintiff on or about the second day of July, 1887, and others, to the amount of about seven hundred dollars, were taken by it a few days later. For the notes so taken it allowed nine hundred dollars in payment of indebtedness due to it from the Fisks, and paid them between eight hundred dollars and nine hundred dollars in money. The mortgage held by McFarland was not satisfied, and the money received by the Fisks seems to have been retained by them. It is claimed that the agreement pleaded was made by L. W. Fisk for his firm, and by Erickson for the plaintiff. C. L. Fisk spoke to Erickson in regard to taking the sale notes a short time before the sale, and was told to have his father come to the bank. The father testifies in regard to the alleged agreement as follows: "I went to Boone some time prior to the sale, saw Mr. Erickson about the matter, stated to him, at his request, about the amount of notes I thought the sale would bring, and about the amount we would need additional to meet our necessities and clear our herd. I told him of all the liens on the herd, and by whom held, and of the understandings I had with the parties holding liens in regard to putting stock on sale, etc. He said: 'We do not know much about short-horn cattle, but I presume it is all right; but how would it do for me to attend your sale, and learn more about them?' I said that would please me well, and it was so arranged. Mr. Erickson came to our place June twenty-second, and was there over night, and stayed at.

the sale. As he was about leaving, after the sale, he said to me: 'You have had a good sale; it is all right. When will you be up?' I said 'As soon as we get the notes all in.' * * * There was nothing said between Mr. Erickson and us, while he was at our place and at the sale, in reference to our arrangements for the sale of the notes and the further .loan agreed upon, except as I have said. When he was about leaving, and ready to get into the buggy, I saw him look towards me as though he would say something; so I went to him, and he said: 'You have had a good sale; it is all right. When will you be up?' And I answered, 'As soon as the notes are all in.' " Both the Fisks say, in effect, that they relied upon the arrangement with Erickson, and understood from it that money would be advanced by the plaintiff to pay the incumbrances on the herd; but there is no evidence of an agreement to that effect, excepting what we have set out. In our opinion, that is wholly insufficient to show that any agreement was made. It appears clearly that no definite conclusion was reached before Erickson attended the sale, and his statement, made at that time,—"You have had a good sale; it is all right,"—was not sufficient to conclude an agreement, for the reason that it does not appear to have been designed to have that effect, and for the further reason that no terms had been previously stated to which the remark could apply. There was never any meeting of the minds of the contracting parties in an assent to a definite proposition. At most, Erickson gave the Fisks reason to believe that an agreement satisfactory to them might be made, but the arrangement suggested was never carried into effect, and we find little, if anything, in the record to justify the claim that the failure to conclude the negotiation was due to any fault on the part of the plaintiff. There was no agreement between the plaintiff and the Fisks which the latter could have enforced, and it necessarily follows

that there was no agreement which can be made the foundation of a defense by the defendant.

II. The appellant complains of the fourth paragraph of the charge to the jury, which is as follows:

2. ——:——:  
instructions  
to jury.

"If then you find from the evidence that, prior to said public sale, the City Bank of Boone or its cashier Erickson made or entered into an agreement with Fisk & Son, by which the bank was to receive a part or all of the notes taken at the sale, and in consideration thereof was to pay off the McFarland mortgage, or was to advance the money to Fisk & Son with which to pay off said mortgage, and that in pursuance of such an agreement said Fisk & Son turned over to said bank the note now in suit, then the bank cannot recover in this action, and your verdict will be for the defendant, without reference to the fact whether the bank or Erickson did or did not know that the particular property sold to defendant was included in the mortgage."

We are of the opinion that this should not have been given. As we have seen, the agreement therein referred to was never made, and the court should have so instructed the jury. In the conversation had between L. W. Fisk and Erickson upon which the defendant relies, it was not proposed that the plaintiff should pay the McFarland mortgage. Fisk told Erickson the amount of the liens, and by whom they were held; but it was not proposed that the bank should pay the amount due on the incumbrances to the persons who held them, although that may have been the proper way of satisfying them. But the statements of Fisk, in substance, were that he and his son would need the proceeds of the sale and an additional amount to satisfy the liens and meet other demands. Nothing was said as to the means by which the additional sum was to be secured, nor as to how any of it should be paid, but after the sale Fisk obtained money of the plaintiff on the sale notes transferred, with which to pay the

holder of one mortgage, which was specified. Although the Fisks testify that they relied upon the arrangement with the plaintiff for money to use in satisfying the McFarland mortgage in selling the property covered by it, there is no evidence whatever that the plaintiff ever agreed to satisfy that mortgage, or to advance money for that purpose. Nor is there any evidence that the note in suit was turned over to the plaintiff to be applied in any manner upon that mortgage. It is true the elder Fisk states that the notes he turned over were for the purpose of completing the arrangements made with Erickson to let him and his son have money on the notes and the herd, and to free the herd from other claims; but settlement was made for the notes as they were turned over, and the Fisks do not claim that any of the money they received for such notes was to be applied on the McFarland mortgage. The portion of the charge in question was not only erroneous, as applied to the undisputed facts in the case, but its effect may have been prejudicial. There was evidence which tended to show that the plaintiff had no notice that the note was given for mortgaged property when it was purchased. The jury might have found that such was the fact, but have been induced to believe from the charge that there was evidence to show that the agreement pleaded in the answer had been made and carried out on the part of the Fisks, and that a verdict for defendant was authorized on that ground.

The judgment of the district court is REVERSED.